1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC TRAVIS, | Case No. 1:23-cv-01267-ADA-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |
| v. | |
| AMERIHOME MORTGAGE COMPANY LLC, | (ECF Nos. 3, 4, 7, 8) |
| Defendant. | **OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

## I.

## INTRODUCTION

Currently before the Court is Defendant Amerihome Mortgage Company, LLC's motion to dismiss Plaintiff Eric Travis' complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). Based on the moving, opposition, and reply papers, the information presented by counsel at the hearing held on October 18, 2023, and the Court's record, the Court recommends Defendant's motion to dismiss be granted in part and denied in part.

## II.

## BACKGROUND

On July 20, 2023, Eric Travis ("Plaintiff") filed this action in the Superior Court of the State of California, County of Fresno, Case No. 23CECG02934 against Amerihome Mortgage Company, LLC ("Defendant"). (ECF No. 1.) Defendant removed this action to this Court on

1   August 23, 2023 on the basis of federal question jurisdiction.  (<u>Id.</u> at 2-3.)

2          In May 2017, Plaintiff alleges he obtained a mortgage loan on his real property located at

3   1627 Jordan Avenue, Clovis, California 93411 ("Property") for $332,000.00 by deed of trust

4   from Country Club Mortgage, Inc.  (Compl. ¶¶ 1, 9, Exhibit A.)  Plaintiff alleges an assignment

5   of deed of trust was recorded in the Fresno County Recorder's Office on October 20, 2021,

6   which assigned the deed of trust from Country Club Mortgage, Inc. to Defendant.  (Compl. ¶ 10,

7   Exhibit B.)  On February 24, 2023, Defendant recorded a notice of default and election to sell

8   under a deed of trust ("notice of default").  (Compl. ¶ 11, Exhibit C.)  The notice of default

9   included a declaration from Defendant dated December 2, 2022, and signed on December 8,

10  2022, which detailed Defendant's purported unsuccessful attempts to contact Plaintiff by mail

11  and telephone.  (<u>Id.</u>)  Plaintiff alleges the foreclosure trustee recorded a notice of trustee's sale

12  ("notice of sale") on May 22, 2023.  (Compl. ¶ 12, Exhibit D.)  Plaintiff contends the Property

13  was unlawfully sold on June 21, 2023.  (<u>Compl. ¶ 12.</u>)

14         On August 30, 2023, Defendant filed a motion to dismiss this action with prejudice.

15  (Def.'s Mot. Dismiss ("Mot."), ECF No. 3.)   On September 13, 2023, Plaintiff filed an

16  opposition to Defendant's motion to dismiss.  (Pl.'s Opp'n Mot. ("Opp'n"), ECF No. 7.)  On

17  September 25, 2023, Defendant filed a reply to Plaintiff's opposition.  (Def.'s Reply ("Reply"),

18  ECF No. 8.)  The Court held a hearing on the matter on October 18, 2023.  (ECF No. 9.)

19  Anthony Cara appeared via video on behalf of Plaintiff and Eric Houser appeared via video on

20  behalf of Defendant.  (<u>Id.</u>)  The Court took the matter under submission.

21                                        **III.**

22                                **LEGAL STANDARD**

23         Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a party may file a motion to

24  dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be

25  granted."   A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the

26  complaint.  <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding a motion to

27  dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most

28  favorable to the nonmoving party."  <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337–38 (9th

Cir. 1996).  The pleading standard under Rule 8 does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true.  Iqbal, 556 U.S. at 678-79.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  To avoid a dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.

In deciding whether a complaint states a claim, the Ninth Circuit has found that two principles apply.  First, to be entitled to the presumption of truth, the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief.  Id.  "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  Navarro, 250 F.3d at 732 (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988)).

## IV.

## DISCUSSION

In his complaint, Plaintiff alleges seven causes of action: violations of the California Homeowner Bill of Rights ("HBOR"), California Civil Code §§ 2923.5, 2924(a)(1), and 2924.9 (the first through third causes of action, respectively); negligence; wrongful foreclosure; violation of California's Unfair Competition Law ("UCL") under California Business and Professions Code § 17200, et seq.; and cancellation of instruments.  Notably, Plaintiff's sole federal claim is not alleged as an independent cause of action; rather, Plaintiff alleges as a "general and factual allegation[]" that Defendant violated 15 U.S.C. § 1641(g), a provision of the Truth in Lending Act ("TILA").  Plaintiff's TILA claim serves both as an alleged underlying

1  statutory duty for his fourth cause of action for negligence and predicate claim for his sixth cause
2  of action for violation of UCL.

3       Defendant seeks to dismiss Plaintiff's general allegation of violation of 15 U.S.C. §
4  1641(g) and each cause of action in Plaintiff's complaint.  Defendant first argues Plaintiff
5  received timely notice that the deed of trust was assigned to Defendant, in compliance with 15
6  U.S.C. § 1641(g).  Further, Defendant argues its December 2022 declaration attached to the
7  notice of default confirms Defendant complied with HBOR notice requirements.  Defendant
8  alternatively argues that even if the declaration does not demonstrate compliance, Plaintiff is not
9  entitled to any relief under the first cause of action because the Property has already been sold.
10 Defendant avers Plaintiff's negligence claim fails as a matter of law because recent California
11 Supreme Court precedent has found that lenders and loan servicers do not owe borrowers a duty
12 to process, review, and respond to a borrower's loan modification application.  Finally,
13 Defendant contends that Plaintiff's wrongful foreclosure, UCL, and cancellation of instruments
14 causes of action fail because each is derivative of Plaintiff's failed TILA, HBOR, and negligence
15 claims.  Defendant also avers that Plaintiff lacks standing to assert a claim under the UCL.

16      **A.**     **Defendant's Request for Judicial Notice**

17      Defendant requests this Court take judicial notice of four documents: (1) a deed of trust
18 recorded on May 9, 2017 in the Fresno County Recorder's Office; (2) an assignment of deed of
19 trust recorded on October 20, 2021 in the Fresno County Recorder's Office; (3) a notice of
20 default and election to sell recorded on February 24, 2023 in the Fresno County Recorder's
21 Office; and (4) a notice of trustee's sale recorded on June 21, 2023, in the Fresno County
22 Recorder's Office.  (Req. Jud. Not., ECF No. 4.)  As confirmed with Defendant's counsel at the
23 hearing held in this matter, the same four documents are also attached and incorporated in
24 Plaintiff's complaint in identical sequential order.  (See ECF No. 1, Exhibits A-D).

25      "[C]ourts do not take judicial notice of documents, they take judicial notice of facts. The
26 existence of a document could be such a fact, but only if the other requirements of Rule 201 are
27 met."  Cruz v. Specialized Loan Servicing, LLC, No. SACV2201610CJCJDEX, 2022 WL
28 18228277, at *2 (C.D. Cal. Oct. 14, 2022) (internal citation and quotations omitted).  As a

general matter, judicial notice may be taken of recorded instruments because they are public records whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201; see Perez v. Am. Home Mortg. Servicing, Inc., No. 12-cv-009323-WHA, 2012 WL 1413300, at *2 (N.D. Cal. Apr. 23, 2012) (taking judicial notice of deed of trust, notice of default, assignment of deed of trust, and substitution of trustee recorded with Alameda County Recorder's Office).  However, while matters of public record are proper subjects for judicial notice, a court may not take judicial notice of a fact within a public record that is "subject to reasonable dispute."  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (citing Fed. R. Evid. 201(b)).

Here, the Court has authority under Rule 201 to take judicial notice that the (1) deed of trust; (2) assignment of deed of trust; (3) notice of default; and (4) notice of sale were recorded with the Fresno County Recorder's Office on the dates indicated by the receipt stamp; however, the Court's judicial notice "extends only to the existence of these documents and not to their substance, which may contain disputed or irrelevant facts."  Givens v. Newsom, 629 F. Supp. 3d 1020, 1024 (E.D. Cal. 2022).  Accordingly, the Court grants judicial notice limited to the facts that the four documents exist and were publicly filed in the Fresno County Recorder's Office on the respective dates reflected on each document.[1]

## B.   First Cause of Action for Violation of California Civil Code section 2923.5[2]

Plaintiff's first cause of action alleges Defendant violated California Civil Code section 2923.5(a)(2), which requires a "mortgagee, beneficiary or authorized agent" to "contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure" prior to recording a notice of default.

---

[1] Because Plaintiff filed the (1) deed of trust; (2) assignment of deed of trust; (3) notice of default; and (4) notice of sale as exhibits to his complaint, Plaintiff has incorporated by reference certain facts contained in the documents, rendering Defendant's request unnecessary.  See Lee, 250 F.3d at 688 (noting "a court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment").  Any analysis by the Court regarding such facts shall be attributed to Plaintiff's incorporation of the facts by reference to the recorded documents in his complaint, rather than Defendant's request for judicial notice.
[2] Plaintiff's first cause of action asserts a violation of section 2923.5, yet Defendant's motion repeatedly cites section 2923.55.  Although the two provisions are "substantively similar," section 2923.55 "generally applies only to larger mortgage servicers," while section 2923.5 "applies to smaller servicers."  Warren v. PNC Bank Nat'l Ass'n, No. 22-CV-07875-WHO, 2023 WL 3182952, at *4 (N.D. Cal. Apr. 30, 2023) (citing Billesbach v. Specialized Loan Servicing, LLC, 63 Cal. App. 5th 830, 844 n.7 (2021).  Because Plaintiff relies on section 2923.5 in both his complaint and opposition, the Court herein addresses the claim under section 2923.5.

Defendant argues Plaintiff's first cause of action should be dismissed for two reasons: (1) Plaintiff fails to state a cognizable claim because Defendant's December 2022 declaration confirms Defendant fully complied with section 2923.5 and (2) Plaintiff's claim fails as a matter of law because the Property has already been sold and the only remedy for a violation of section 2923.5 is postponement of an impending foreclosure.  (Mot. 10-11.) [3]

    1.    <u>Defendant's December 2022 Declaration Does Not Prove Plaintiff Fails State a Cognizable Claim Under Section 2923.5(a)(2)</u>

Plaintiff alleges that despite residing at the Property when the Notice of Default was recorded on February 24, 2023, he "received no mail or messages" from Defendant to assess Plaintiff's financial situation and explore options to avoid foreclosure, in violation of section 2923.5(a)(2).  (Compl. ¶ 19.)  In response, Defendant points to its December 2022 declaration—which was both recorded with the notice of default on February 24, 2023, and attached as an exhibit to Plaintiff's complaint—that details Defendant's diligent attempts to contact Plaintiff in conformance with section 2923.5.  (Mot. 9.)  Defendant argues Plaintiff fails to state a claim under section 2923.5(a)(2) because his allegations that he did not receive proper notice is contradicted by the recorded December 2022 declaration.

Defendant cites both <u>Kamp v. Aurora Loan Services</u>, No. SACV09008440CJC(RNBx), 2009 WL 3177636 (C.D. Cal. October 1, 2009) and <u>Juarez v. Wells Fargo Bank, N.A.</u>, No. CV093104AHM(AGRx), 2009 WL 3806325 (C.D. Cal. Nov. 11, 2009) to support its proposition that a declaration recorded with the notice of default is sufficient to satisfy a defendant's obligations under section 2923.5.  (Mot. 10.)  However, the Court notes that both the <u>Kamp</u> and <u>Jaurez</u> plaintiffs were specifically challenging California Civil Code section 2923.5(c), which requires that a recorded notice of default include a declaration that the servicer has contacted or attempted to contact the borrower with due diligence to attempt to avoid foreclosure.  Here, Plaintiff has not alleged that Defendant failed record the December 2022 declaration; rather, Plaintiff is indirectly challenging the content of the declaration.

---

[3] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1    The Court similarly finds Defendant's reliance on Cabanilla v. Wachovia Mortg., No.

2    SACV1200228CJC(JPRx), 2012 WL 13020028 (C.D. Cal. March 20, 2012) to be unavailing.

3    Unlike the instant case, the Cabanilla plaintiffs alleged that the defendant mortgage servicer

4    contacted the plaintiffs via telephone prior to filing the notice of default.  (Id. at 3.)  However,

5    the crux of the Cabanilla plaintiffs' section 2923.5 claim was that the contact from the mortgage

6    servicer "requires a discussion of possible means of avoiding foreclosure, rather than merely a

7    cursory phone call assessing the borrower's financial situation."  (Id.)  Thus, the plaintiffs were

8    challenging the *extent* to which a servicer must advise borrowers during the initial contact.

9    Conversely, Plaintiff in the instant action challenges the *existence* of the initial contact.

10    Specifically, Plaintiff alleges in his complaint he "received no mail or messages" from Defendant

11    prior to Defendant's recording of the notice of default.

12    The Court finds Defendant's argument in favor of dismissal of Plaintiff's first cause of

13    action to be unavailing at the pleadings stage because it is rooted entirely on a factual challenge.

14    See Lee, 250 F.3d at 688 ("Factual challenges to a plaintiff's complaint have no bearing on the

15    legal sufficiency of the allegations under Rule 12(b)(6)").  Defendant proffers by way of its

16    recorded December 2022 declaration that it attempted to contact Plaintiff numerous times in

17    compliance with section 2935.5(a)(2); however, Plaintiff alleges Defendant did not contact

18    Plaintiff at all, in violation of section 2935.5(a)(2).  (Mot. 10; Compl. 19.)  The Court cannot

19    resolve such a factual disagreement at the pleadings stage.  See, e.g., Kennedy v. Bank of Am.,

20    N.A., No. 12-CV-952 YGR, 2012 WL 1458196, at *5 (N.D. Cal. Apr. 26, 2012) (noting the

21    truthfulness of a declaration stating a servicer tried with due diligence to contact the borrower in

22    accordance with section 2923.5 cannot be established on the pleadings); Barrionuevo v. Chase

23    Bank, N.A., 885 F. Supp. 2d 964, 977 (N.D. Cal. 2012) ("When a plaintiff's allegations dispute

24    the validity of defendant's declaration of compliance in a Notice of Default ... the plaintiff has

25    plead[ed] enough facts to state a claim to relief that is plausible on its face").  Here, Plaintiff has

26    plausibly alleged that Defendant did not contact him prior to recording the notice of default to

27    assess Plaintiff's financial situation and explore options to avoid foreclosure in violation of

28    section 2923.5(a)(2).  Accordingly, the Court finds Plaintiff has properly pled a violation of

1    section 2923.5(a)(2).

2          2.    Plaintiff Is Not Entitled to Any Relief Under Section 2923.5

3          Defendant alternatively argues that even if Plaintiff states a cognizable claim under

4    section 2923.5, Plaintiff has no available relief because the only remedy for a violation of section

5    2923.5 is postponement of an impending foreclosure.  (Mot. 11.)  Because it is undisputed the

6    Property was already sold in a nonjudicial trustee's sale on June 21, 2023, Defendant argues

7    Plaintiff has failed to state a claim upon which any relief can be granted.  (Id.; Compl. ¶ 12.)  The

8    Court agrees.  See Mabry v. Superior Court, 185 Cal. App. 4th 408, 214 (2010) (clarifying that

9    the only remedy available under Section 2923.5 is "a postponement of an impending foreclosure

10   to permit the lender to comply with [section 2923.5]"); Herrejon v. Ocwen Loan Servicing LLC,

11   990 F. Supp. 2d 1186, 1210 (E.D. Cal. Nov. 1, 2013) (noting "if the foreclosure sale has

12   occurred, section 2923.5 provides plaintiffs no remedy").  At the hearing held in this matter on

13   October 18, 2023, Plaintiff's counsel conceded no remedy is available to Plaintiff under section

14   2923.5.  Because it is undisputed Plaintiff has no available remedy for Defendant's alleged

15   violation of section 2923.5, the Court recommends granting Defendant's motion to dismiss

16   Plaintiff's first cause of action without leave to amend.

17         **C.    Second Cause of Action for Violation of California Civil Code § 2924(a)(1)**

18         In his opposition to Defendant's motion to dismiss, Plaintiff states that he "will cease to

19   pursue causes of action for Violation of 2924(a)(1)."  (Opp'n 5.)  Accordingly, the Court

20   recommends granting Defendant's motion to dismiss Plaintiff's second cause of action without

21   leave to amend.

22         **D.    Third Cause of Action for Violation of California Civil Code § 2924.9**

23         Plaintiff's third cause of action alleges Defendant violated California Civil Code section

24   2924.9, which requires that a mortgage servicer send the borrower a written communication

25   containing specific information regarding foreclosure prevention alternatives within five

26   business days after recording a notice of default.  The remedy for section 2924.9 is governed by

27   section 2924.12, which states:

28               After a trustee's deed upon sale has been recorded, a mortgage

servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages ... *resulting from a material violation* of section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by that mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale.

Cal. Civ. Code 2924.12(b) (emphasis added).

1. <u>Plaintiff Has Adequately Alleged He Received No Communications from Defendant After the Notice of Default Was Recorded</u>

Defendant avers that section 2924.9 applies to discussions about foreclosure alternatives after the notice of default is recorded, not before the nonjudicial foreclosure process is commenced.  (<u>Id.</u>)  Defendant argues "Plaintiff alleges only that he 'did not receive any phone calls or phone messages and did not receive any pieces of mail that referred to discussions about alternatives [to foreclosure] *before* it was commenced.'"  (Mot. 13 (citing Compl. ¶ 33).)  Plaintiff maintains in his opposition that he was not contacted by Defendant within five days after the recording of the notice of default.  (Opp'n 11.)

The Court disagrees with Defendant's interpretation of Plaintiff's complaint.  While Plaintiff alleges that he did not receive any communication prior to the notice of default being recorded, Plaintiff also alleges he did not receive the requisite communication regarding foreclosure prevention alternatives after the notice of default was recorded.  Specifically, Plaintiff expressly alleges Defendant failed to notify him of any foreclosure prevention alternatives within five business days after the Notice of Default was recorded.  (Compl. ¶ 32.)  Plaintiff further alleges that he was "staying in his home when the Notice of Default was issued and received no mail or messages."  (<u>Id.</u> at ¶ 33.)  Accordingly, the Court finds Plaintiff has adequately pled he received no communication from Defendant following the recording of the notice of default in violation of section 2924.9.

2. <u>Plaintiff Has Adequately Alleged a Material Violation of Section 2924.9</u>

California Civil Code section 2924.12(b) only provides a remedy for a "material violation" of section 2924.9.  "A material violation occurs where the violation: (1) affects the borrower's loan obligations, (2) disrupts the borrower's loan modification process, or (3) causes the borrower to

1  suffer harm that he would not have otherwise suffered related to his right to be considered for

2  loss mitigation options."  Mountjoy v. Seterus, Inc., No. 2:15-CV-02204-DJC-DB, 2023 WL

3  4086763, at *11 (E.D. Cal. June 20, 2023) (citing Morris v. JPMorgan Chase Bank, N.A., 78

4  Cal. App. 5th 279, 304–05 n.14 (2022)); see also Cornejo v. Ocwen Loan Servicing, LLC, 151 F.

5  Supp. 3d 1102, 1113 (E.D. Cal. 2015) (noting that in the context of HBOR, a material violation

6  is one where "the alleged violation affected a plaintiff's loan obligations or the modification

7  process").  "While some [district courts within the Ninth Circuit] have held that materiality is a

8  question that cannot be resolved at the pleading stage, Plaintiff still must plead something to

9  satisfy 2924.12's materiality requirement."  Galvez v. Wells Fargo Bank, N.A., No. 17-CV-

10  06003-JSC, 2018 WL 4849676, at *5 (N.D. Cal. Oct. 4, 2018) (citing Cardenas v. Caliber Home

11  Loans, Inc., 281 F. Supp. 3d 862, 869 (N.D. Cal. 2017) (noting courts take "divergent

12  approaches" with some concluding that materiality cannot be resolved at the pleading stage and

13  others finding that a violation is only material if it is plausible the violation caused Plaintiff to

14  suffer some harm).

15      Defendant argues that even if it violated section 2924.9, Plaintiff's claim should be

16  dismissed with prejudice because Plaintiff fails to allege specific facts showing Defendant's

17  alleged violation amounted to a material violation that impacted Plaintiff's ability to obtain a

18  loan modification pursuant to section 2924.12.  (Mot. 13.)  In opposition, Plaintiff fails to

19  respond to Defendant's argument regarding materiality specifically under his section 2924.9

20  argument.  However, Plaintiff argues under his first cause of action for another HBOR violation

21  that Defendant failed to give Plaintiff any loss mitigation options after recording the notice of

22  default.  (Opp'n 10.)  Plaintiff argues Defendant's violation of section 2924.9 amounts to a

23  material violation because Plaintiff "lost the chance to receive a loan modification that he would

24  otherwise have been eligible for" and he suffered harm because he "had to pay additional interest

25  & late charges and fees associated with inspection on the property which servicers normally do

26  every month and is standard procedure when foreclosure activity is initiated."  (Opp'n 11.)

27      Turning to Plaintiff's complaint, Plaintiff alleges Defendant failed to notify him via "mail

28  or message[]" of any foreclosure prevention alternatives within five business days after the

notice of default was recorded, as required by section 2924.9.  (Compl. ¶¶ 31-32.)  Plaintiff further alleges that had he received the contact and communication required under section 2924.9, he "would have taken action to avoid the foreclosure of the Subject Property with other lending sources."  (Id. at ¶ 33.)  Instead, Plaintiff alleges Defendant foreclosed on the property and recorded the notice of sale in May 2023.  (Id. at ¶ 12.)

Two District Courts in California have each recently found identical allegations by plaintiffs to be plausible to allege a material violation of section 2924.9.  First, in Warren v. PNC Bank National Association, a Northern District of California Court found a defendant's failure to communicate about foreclosure prevention alternatives disrupted the plaintiff's loan modification process or otherwise harmed him by "closing the door to anything but foreclosure."  2023 WL 3182952, at *5.  The complaint in Warren identically alleged that the plaintiff "did not receive any phone calls or phone messages and did not receive any piece of mail that referred to foreclosure alternatives," but if the plaintiff had received "such contact and communication he would have taken action to avoid the foreclosure of the subject property with other lending sources."  Id.  The court noted that filing a notice of default is the first step in the foreclosure process and therefore found it plausible that the defendant-servicer's failure to contact plaintiff about the first step "disrupted [plaintiff's] loan modification process (by closing that process off before it could even begin) or caused [plaintiff] harm (by foreclosing upon his home without proper notice)."  Id. at *4.  The court therefore found the plaintiff sufficiently alleged a material violation of section 2924.9.

Similarly, in Scott v. Cenlar FSB, a Central District of California Court found the defendant-servicer's alleged violation of section 2924.9 affected the loan modification process and was material where Plaintiff alleged that "if he had received the required communication, he would have taken action to avoid foreclosure with other lending sources."  No. 2:23-cv-05473-SVW-MRW, 2023 WL 6881906, at *2 (C.D. Cal. September 28, 2023).  The court relied on the Eastern District's decision, Hsin-Shawn Sheng v. Select Portfolio Servicing, Inc., which found a defendant's alleged violation of section 2924.10(a)—which requires mortgage servicers to provide written acknowledgment of documents received from borrowers within five days of

1    receipt—had "affected" the loan modification process by making it difficult for the borrower to

2    determine whether her application was complete.   No. 2:15–cv–0255–JAM–KJN, 2015 WL

3    4508759, at *3 (E.D. Cal. July 24, 2015).   The court in <u>Scott</u> reasoned that the communication

4    required by section 2924.9, which specifically requires that the servicer communicate (1) that the

5    borrower may be evaluated for foreclosure prevention alternatives, (2) whether an application

6    must be submitted to be considered for such alternatives, and (3) how the borrower can obtain an

7    application, was "integral to the loan modification process" because, similar to the violation

8    found in <u>Hsin-Shawn Sheng</u>, it informed the borrower about the foreclosure process and the

9    required documents.   <u>Id.</u>   The court in <u>Scott</u> therefore determined that plaintiff had sufficiently

10   alleged a material violation because had the plaintiff "been better informed, it is plausible that he

11   could have modified the loan with other lending sources."   <u>Id.</u>

12         The Court finds the reasoning in <u>Warren</u> and <u>Scott</u> persuasive in the instant action

13   wherein Plaintiff pleads an identical allegation that he "would have taken action to avoid the

14   foreclosure of the Subject Property with other lending sources."   (Compl. ¶ 33.)   Plaintiff's

15   allegations plausibly demonstrate that Plaintiff's loan modification process was affected by

16   Defendant's alleged violation of section 2924.9 because Defendant's lack of communication

17   precluded Plaintiff from taking action—for example, modifying the loan—through other lending

18   sources.   (<u>See</u> Opp'n at 11 ("Plaintiff lost the chance to receive a loan modification that he would

19   otherwise have been eligible for").)

20         Defendant also briefly argues Plaintiff's failure to specify what action he would have

21   taken with other lending sources, coupled with the "substantial length of time" between the

22   notice of default being recorded in February 2023 and the June 2023 sale of the Property, equates

23   to a "fail[ure] to *plead* any materiality."   (Mot. 13 (emphasis added).)   The Court disagrees.

24   First, the pleading standard under Rule 8 does not require such detailed factual allegations.

25   <u>Iqbal</u>, 556 U.S. at 678.   Here, Plaintiff alleges he "would have taken action to avoid the

26   foreclosure of the Subject Property with other lending sources."   (Compl. ¶ 33.)   As discussed,

27   this is sufficient to state a plausible claim for a material violation of section 2924.9 without the

28   need for a laundry list of other actions Plaintiff would have taken had he received the required

1  communication from Defendant regarding foreclosure alternatives.  Further, the Court finds
2  Defendant's argument regarding the length of time between the notice of default and the actual
3  sale goes to proving materiality rather than the instant relevant inquiry of whether Plaintiff has
4  pled a material violation.  See, e.g., Warren, 2023 WL 3182952, at *4 (noting plaintiff "must
5  plead something to satisfy 2924.12's materiality requirement," but he "need not *prove* materiality
6  at this point"); Scott, 2023 WL 6881906, at *2 (noting "materiality is an issue better reserved for
7  summary judgment"); Garcia v. PNC Mortgage, No. C 14–3543 PJH, 2015 WL 534395, at *4
8  (N.D. Cal. Feb. 9, 2015) (finding materiality raises issues of fact that cannot be determined on a
9  Rule 12(b)(6) motion); Hestrin v. CitiMortgage, Inc., No. 2:14-CV-9836-SVW-AJW, 2015 WL
10  847132, at *3 n.4 (C.D. Cal. Feb. 25, 2015) (noting "materiality is often a question of fact
11  inappropriate for resolution on a Rule 12 motion").  The Court therefore finds Plaintiff's
12  allegation that had he received the communication required under section 2924.9, he "would
13  have taken action to avoid the foreclosure of the Subject Property with other lending sources"
14  sufficiently satisfies 2924.12's materiality requirement at this motion to dismiss stage.

15      Construing the facts as alleged in the light most favorable to Plaintiff, the Court finds that
16  Plaintiff has plausibly alleged a material violation of section 2924.9 by Defendant.  The Court
17  therefore recommends denying Defendant's motion to dismiss Plaintiff's third cause of action.

### E.    Fourth Cause of Action for Negligence

19      At the hearing held in this matter on October 18, 2023, Plaintiff's counsel informed the
20  Court that Plaintiff does not oppose Defendant's argument that Plaintiff's fourth cause of action
21  should be dismissed.  Accordingly, the Court recommends granting Defendant's motion to
22  dismiss Plaintiff's fourth cause of action without leave to amend.

### F.    Fifth Cause of Action for Wrongful Foreclosure

24      Wrongful foreclosure "is an equitable action to set aside a foreclosure sale, or an action
25  for damages resulting from the sale, on the basis that that the foreclosure was
26  improper."  Sciarratta v. U.S. Bank Nat'l Ass'n, 247 Cal. App. 4th 552, 561 (2016).  The
27  elements of the tort of wrongful foreclosure are as follows:

28      (1)  the trustee or mortgagee caused an illegal, fraudulent, or

1   willfully oppressive sale of real property pursuant to a power of
2   sale in a mortgage or deed of trust; (2) the party attacking the
    sale...was prejudiced or harmed; and (3) in cases where the trustor
3   or mortgagor challenges the sale, the trustor or mortgagor tendered
    the amount of the secured indebtedness or was excused from
    tendering.

Id. at 561-62.  Defendant challenges Plaintiff's wrongful foreclosure claim on each of the three elements.

       1.     <u>Illegal, Fraudulent, or Willfully Oppressive Trustee's Sale</u>

Defendant first argues that Plaintiff failed to plead facts sufficient to show an illegal, fraudulent, or willfully oppressive sale.  Defendant avers Plaintiff's wrongful foreclosure claim necessarily fails because it is based on allegations that Defendant violated California Civil Code sections 2923.5, 2924(a)(1), 2934a(a)(1), 2924(e), and 2924.9, which Defendant contends are failed claims.  (Mot. 15.)

As previously discussed, the Court recommends Plaintiff's claims under section 2923.5 (first cause of action) and "2924(a)(1), 2934a(a)(1), and 2924a(e)" (second cause of action) be dismissed with prejudice.  However, because the Court recommends finding Plaintiff has sufficiently alleged a claim under section 2924.9, Defendant's argument is unavailing.  <u>See</u> <u>Santana v. BSI Fin. Servs., Inc.</u>, 495 F. Supp. 3d 926 at 948 (S.D. Cal. 2020) (finding a properly alleged claim for wrongful foreclosure based on alleged violations of HBOR).

However, the Court notes that in his sparce opposition to Defendant's motion to dismiss his wrongful foreclosure claim, Plaintiff argues that "Defendant willingly and maliciously recorded the notice of default so defendant could claim Plaintiff was in default and thereafter file a fraudulent notice of sale." (Opp'n 17.)  Plaintiff further argues "Defendant knew the house had equity and knew foreclosing on the property would quickly pay off the entire loan." (Id.)  Given this opposition, the Court notes that to the extent Plaintiff is pleading a violation of the "fraudulent sale" prong of wrongful foreclosure in his complaint, it falls short.  Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  "Averments of fraud must be accompanied by the who, what, where, when,

and how of the misconduct charged."  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted).  Plaintiff has not met the heightened pleading standards under Rule 9, as he fails to allege any facts in his complaint that support his argument in his opposition that Defendant has engaged in a fraudulent sale of the Property.  Should Plaintiff elect to amend his complaint, more specificity is required to plausibly allege that Defendant caused a fraudulent sale of the Property under a wrongful foreclosure claim.  Accordingly, the Court finds only that Plaintiff has sufficiently alleged that Defendant engaged in an unlawful sale of his Property based on its alleged violation of section 2924.9.

2.      Prejudice or Harm to Plaintiff

Defendant next argues Plaintiff failed to plead facts demonstrating he was prejudiced or harmed by Defendant's violation of section 2924.9.  (Mot. 15.)  Indeed, Plaintiff only generally alleges within his fifth cause of action in his complaint that he "suffered prejudice or harm as a result of the wrongful foreclosure," which is conclusory and devoid of factual allegations. (Compl. ¶ 44.)  However, Plaintiff also "realleges and incorporates all preceding paragraphs as though set forth fully" within his fifth cause of action.  (Compl. ¶ 41.)  See Mountjoy, 2018 WL 339060, at *15 (liberally construing the complaint and holding the plaintiff sufficiently alleged harm caused by the wrongful foreclosure by incorporating by reference the allegations made in multiple places in the complaint).  Plaintiff alleges in preceding causes of action that he suffered harm including immediate damage to his credit and emotional and mental suffering as a result of Defendant's alleged wrongful conduct.[4]  (Compl. ¶¶ 28, 39); see Miles v. Deutsche Bank Nat'l Trust Co., 236 Cal. App. 4th 394, 409 (2015) (finding damages for wrongful foreclosure include damage to credit and emotional distress).  Accordingly, the Court finds Plaintiff plausibly alleged he suffered harm as a result of Defendant's alleged wrongful foreclosure.

3.      Tender Rule

Defendant argues Plaintiff's wrongful foreclosure claim fails under the third element

---

[4] The Court notes that the specified harm incorporated in Plaintiff's fifth cause of action is only alleged in the second cause of action, which Plaintiff has stated he "will cease to pursue" (Opp'n 5), and fourth cause of action, which Plaintiff's counsel conceded at the October 18, 2023 hearing that Plaintiff did not oppose.  Should Plaintiff elect to amend his fifth cause of action, he must reallege how he was prejudiced or what harm he suffered as a result of Defendant's alleged wrongful foreclosure.

because Plaintiff failed to allege that he tendered the full amount of the loan.  (Mot. 15; Reply 9.)

"Where tendering is required and not excused, a plaintiff seeking to set aside an irregular sale

must allege tender of the full amount of the loan to maintain any cause of action that either is

based on the wrongful foreclosure allegations or seeks redress from that foreclosure."  Turner v.

Seterus, Inc., 27 Cal. App. 5th 516, 525 (2018).  See also Medrano v. Caliber Homes Loans, Inc.,

No. EDCV 14-02038-VAP (DTBx), 2014 WL 7236925, at *8 (C.D. Cal. July 28, 2016) (noting

"before seeking to set aside a wrongful foreclosure, a plaintiff must either tender the entire

amount of the defaulted debt [] or raise one of four exceptions to the tender requirement")

(citation omitted).  Although Plaintiff never alleges in his complaint whether he tendered the full

amount of the loan, he specifically alleges that he is "excused from the tender requirement

because of [Defendant's] violations of Civ. Code…2924.9."  (Compl. ¶ 45.)  Because Plaintiff is

alleging excuse from tender, the Court finds Defendant's argument that Plaintiff must allege that

he tendered the full amount of the loan unavailing.

Defendant also briefly argues that Plaintiff fails to allege any legitimate excuse for failure

to tender.  (Mot. 15.)  The Court agrees.  A full tender may not be required if the plaintiff alleges

equitable exceptions to the tender rule, such as:

> (1) where the borrower's action attacks the validity of the
> underlying debt, tender is not required since it would constitute
> affirmation of the debt; [citations] (2) when the person who seeks
> to set aside the trustee's sale has a counter-claim or set-off against
> the beneficiary, the tender and the counter-claim offset each other
> and if the offset is greater than or equal to the amount due, tender
> is not required; [citations] (3) a tender may not be required if it
> would be 'inequitable' to impose such a condition on the party
> challenging the sale; [citations] (4) tender is not required where the
> trustor's attack is based not on principles of equity but on the basis
> that the trustee's deed is void on its face (such as where the original
> trustee had been substituted out before the sale occurred)[;]
> [citations] [ (5) ] when the loan was made in violation of
> substantive law, or in breach of the loan agreement or an
> agreement to modify the loan[;] [citations] [and (6) ] when the
> borrower is not in default and there is no basis for the
> foreclosure…

Turner, 27 Cal. App. 5th at 525–26 (internal quotations and citations omitted).

Here, Plaintiff only generally alleges Defendant's HBOR violation excuses Plaintiff from

tendering the full amount of the loan.  (Compl. ¶ 45.)  Plaintiff provides no authority to support

his general allegation that a defendant's violation of section 2924.9 is itself a decisive equitable exception to the tender rule under a claim for wrongful foreclosure. Notably, "mere technical violations of the foreclosure process will not give rise to a tort claim; the foreclosure must have been *entirely unauthorized* on the facts of the case." Miles, 236 Cal. App. 4th at 409 (emphasis added). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a cognizable claim. Iqbal, 556 U.S. at 678. Because Plaintiff's complaint fails to plead facts demonstrating he is excused from tender, the Court recommends granting Defendant's motion to dismiss with leave to amend.

### G.   Sixth Cause of Action for Violation of California Business and Professions Code § 17200

The UCL prohibits "unfair competition," which is "any unlawful, unfair or fraudulent business act or practice…." Cal. Bus. & Prof. Code § 17200. The UCL "borrows violations from other laws by making them independently actionable as unfair competitive practices." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1143 (2003). "A business act or practice may violate the UCL if it is either 'unlawful,' 'unfair,' or 'fraudulent,'" as "[e]ach of these three adjectives captures 'a separate and distinct theory of liability.'" Rubio v. Cap. One Bank, 613 F.3d 1195, 1203 (9th Cir. 2010) (citing Kearns v. Ford Motor Co., 567 F.3d 1120, 1127 (9th Cir. 2009).

To have standing under the UCL, a private plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that economic injury was the result of, i.e., *caused by*, the unfair business practice…that is the gravamen of the claim." Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 322 (2011) (emphasis in original). Economic injuries from unfair competition include:

> (1) surrender in a transaction more, or acquire in a transaction less, than [Plaintiff] otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which [Plaintiff] has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.

Id. To show the economic injury was the result of an unlawful, unfair, or fraudulent business

practice, the plaintiff must show a "causal connection" between the injury and the alleged wrongful conduct. Id. at 326. However, "[a] plaintiff fails to satisfy the causation requirement if he or she would have suffered 'the same harm whether or not a defendant complied with the law.'" In re Turner, 859 F.3d 1145, 1151 (9th Cir. 2017) (citation omitted).

Plaintiff alleges violations of the unfair, unlawful, and fraudulent prongs of the UCL as a result of Defendant's alleged HBOR violations and violation of 15 U.S.C. § 1641(g). (Compl. ¶¶ 52-53.) The Court will address the predicate state law and federal law claims separately.

1.   Plaintiff's UCL Cause of Action Predicated on HBOR Violations

Plaintiff alleges "Defendant violated the 'unfair,' 'unlawful,' and 'fraudulent' prongs of the UCL resulting in injury and economic loss to Plaintiff when it purposefully violated [Cal.] Civ Code §§ 2923.5, 2924(a)(1), 2934a(a)(1), and 2924.9." (Compl. ¶ 52.) Plaintiff further alleges Defendant's "unlawful and unfair conduct has caused substantial harm to Plaintiff" which includes "actual, pecuniary injury of the loss of the equity in the value of the Subject Property, and the costs of seeking a remedy for [] Defendant's wrongful actions." (Id. ¶¶ 54, 57.)

Defendant argues Plaintiff's UCL claim should be dismissed for two reasons. First, Defendant avers Plaintiff has not properly alleged any unlawful business practice undertaken by Defendant because Plaintiff has failed to properly state a claim for a violation of any law. (Mot. 16.) The Court rejects this argument because the Court finds Plaintiff has sufficiently alleged that Defendant violated Cal. Civ. Code section 2924.9 by failing to send Plaintiff a written communication containing specific information regarding foreclosure alternatives within five business days after recording the notice of default.[5] Accordingly, Plaintiff has alleged sufficient facts to support a cause of action against Defendant under the UCL's unlawful theory of liability.

Second, Defendant argues that Plaintiff lacks standing to assert a UCL claim because he has not pled a loss of money or property that was caused by Defendant's alleged wrongful conduct. (Mot. 17.) Defendant emphasizes that there is no dispute that Plaintiff was in default

---

[5] As previously discussed, the Court recommends dismissing Plaintiff's section 2923.5 claim with prejudice and Plaintiff has withdrawn his 2924(a)(1) and 2934a(a)(1) claims. Thus, the Court only addresses Plaintiff's derivative section 2925.9 claim under his UCL cause of action.

prior to any of Defendant's alleged misconduct, and thus Plaintiff cannot argue the loss of the Property was caused by any unfair competition by Defendant.  (Id.)  Rather, Defendant argues that "any economic injury is a byproduct of the failure to make mortgage payments."  (Id.)  In opposition, Plaintiff contends he was "wrongfully deprived of alternatives to foreclosure and as such, lost their [sic] home and have [sic] had to endure the expenses of the instant litigation as a result of [Defendant's] failure to comply…[Defendant] continued to charge default, interest and late fees to Plaintiff's account even though this is explicitly against statutory code." (Opp'n 19.) In reply, Defendant argues Plaintiff's allegation that Defendant's alleged failure to contact him regarding foreclosure alternatives "does not constitute a loss of money or property *caused by* the alleged UCL violation because nothing in the mortgage or the law guarantees Plaintiff a mortgage modification."  (Reply 9.)  Instead, Defendant maintains Plaintiff's own default caused the initiation of property foreclosure.  (Id.)

The Court finds Plaintiff has sufficiently alleged an economic injury to satisfy the first prong of standing under the UCL.  Plaintiff's allegation that Defendant's violation of section 2924.9 resulted in "the loss of the equity in the value of the Property" satisfies the economic injury requirement as a diminution of a present or future property interest.  Kwikset, 51 Cal. 4th at 323.  As to his second alleged economic injury, Plaintiff proffers no facts under his UCL cause of action regarding "the costs of seeking a remedy for Defendant's wrongful actions" that Plaintiff allegedly suffered.  (Compl. ¶ 57.)  In opposition, Plaintiff clarifies that Defendant "continued to charge default, interest and late fees to Plaintiff's account." (Opp'n 19.)  The Court notes that Plaintiff "realleges and incorporates all preceding paragraphs as though set forth fully" within his UCL cause of action.  (Id. at ¶ 49.)  As previously discussed, Plaintiff's fourth cause of action—which Plaintiff conceded at the October 18, 2023 hearing—alleges Plaintiff suffered damages including attorneys' fees, late penalties, damage to credit, higher arrears, and ultimately foreclosure of the Property.  (Id. at ¶ 39.)  While not stated within his UCL claim, such damages could also constitute economic injury to support standing under the UCL if properly realleged upon amendment.  See Avnieli v. Residential Credit Sols., Inc., No. 2:15-CV-02877-ODW, 2015 WL 5923532, at *4 (C.D. Cal. Oct. 9, 2015) (finding that "money spent preventing foreclosure

1   on [a] home, harm to their credit, and payment of interest, legal fees, and other costs...easily

2   satisfy the California Supreme Court's interpretation of [Cal. Bus. & Prof. Code] section

3   17204"); Gilliam v. Bank of America, N.A., SA CV 17-1296-DOC (JPRx), 2018 WL 6537160,

4   at *29 (June 22, 2018) (finding plaintiffs sufficiently alleged an injury because they "expended

5   money due to the defendant's acts of unfair competition").  The Court therefore finds Plaintiff

6   has pled a sufficient injury in fact.

7           The Court then turns to the issue of whether Plaintiff has established a "causal

8   connection" between Defendant's alleged failure to send Plaintiff a written communication

9   regarding foreclosure alternatives in violation of 2924.9 and Plaintiff's loss of equity in the value

10  of the Property.  As Defendant points out, Plaintiff neither alleges in his complaint nor disputes

11  in his opposition that he defaulted on his loan.  (Reply 9.)  Some district courts conclude the

12  analysis on that point, finding that borrowers who default on loan payments before foreclosure

13  proceedings commence—and therefore before a defendant allegedly commits an HBOR

14  violation—fail to satisfy the causality prong because the borrower's own default caused the

15  otherwise lawful foreclosure proceedings to begin.  See, e.g., Herrejon, 980 F. Supp. 2d at 1205

16  ("Foreclosure of the property fails to support a UCL claim in the absence of the plaintiffs'

17  performance to avoid default"); Cornejo, 151 F. Supp. 3d 1102 at 1118 ("Because [plaintiffs']

18  default occurred significantly prior to the alleged unlawful acts, the actions could not have

19  caused the [foreclosure]"); Petrey v. Wells Fargo Bank, N.A., 2:17-CV-00503-TLN-DB, 2018

20  WL 5099279, at *12 (E.D. Cal. Oct. 17, 2018) ("Plaintiff's default pre-dated [Defendants'

21  alleged unlawful conduct] and served to trigger foreclosure proceedings"); Ramirez v. U.S.

22  Bank, N.A., No. CV1701949RGKASX, 2017 WL 8223378, at *7 (C.D. Cal. May 26, 2017)

23  (finding no standing under the UCL because the plaintiff failed "to point to facts…that would

24  suggest that the imminent foreclosure of his property was not the result of his own failure to

25  make payments on his loan for over seven years, but rather was caused by [Defendant's]

26  technical violations of the HBOR…"); Flynn v. Wells Fargo Bank, N.A., 2:19-cv-00116 WBS

27  KJN, 2019 WL 2249600, at *15 (E.D. Cal. May 24, 2019) (finding the plaintiff failed to

28  plausibly allege that her injuries were proximately caused by the defendant's alleged violation of

HBOR; "[t]o the contrary, the allegations of the complaint tend to show that the proximate cause of plaintiff's injuries was her inability to meet her obligations under the loan"); Gilliam, 2018 WL 6537160, at *29 ("Plaintiffs must still show that Defendants' illegal conduct, as opposed to Plaintiffs' default, caused the foreclosure proceedings"); but see Cruz, 2022 WL 18228277, at *6 (finding it "is enough to satisfy the causality component" when "[t]he gist of Plaintiffs' complaint" is that "they would have remained in possession of their property as a result of a loan modification or other foreclosure alternatives had Defendant's complied with the HBOR").

Here, Plaintiff blanketly alleges Defendant "violated the unlawful, unfair, and fraudulent prongs of the UCL resulting in injury and economic loss to Plaintiff when it purposely violated section 2924.9." (Compl. ¶ 52.) Thus, Plaintiff's unfair competition claim is derivative of his third cause of action and incorporates the wrongful conduct alleged therein. However, even when incorporating the facts alleged in his third cause of action, the Court is still strained to find a causal connection between Defendant's alleged violation of section 2429.5 and Plaintiff's loss of the Property. While Plaintiff does not allege that he defaulted on the loan, the complaint tends to show that the cause of the foreclosure was his inability to meet his obligations under the loan rather than Defendant's subsequent purported HBOR violation. Thus, in the absence of allegations of Plaintiff's performance to avoid default, Plaintiff's complaint lacks clear factual allegations that the loss of his home or even his ambiguous "costs to remedy Defendant's wrongful actions" were caused by Defendant's alleged violation of section 2429.5. See Herrejon, 980 F. Supp. 2d at 1205. Accordingly, the Court recommends granting Defendant's motion to dismiss Plaintiff's UCL claim on the predicate violation of section 2429.5 but recommends granting leave to amend to allow Plaintiff to clarify the causal connection between Defendant's alleged unlawful conduct and each alleged injury in fact. [6]

---

[6] Because the Court finds Plaintiff has not adequately alleged standing, the Court will not address Plaintiff's allegations of UCL violations under the "unfair" and "fraudulent" prongs in length. However, the Court notes Defendant's argument regarding Plaintiff's shortcomings in alleging the fraudulent prong is well-taken. Specifically, Plaintiff's only factual allegation supporting his fraudulent prong states that "the information provided to Plaintiff was certainly misleading and not consistent as to the status of the loan modification and what he [*sic*] was supposed to do to satisfy the lender's demands." (Compl. ¶ 54.) Not only is this allegation of fraud pled without the requisite specific particularity, but the Court agrees with Defendant that it is also inconsistent with Plaintiff's repetitive allegations that Plaintiff was never contact by Defendant following the recorded notice of

2.      Plaintiff's UCL Cause of Action Predicated on a Violation of 15 U.S.C. § 1641(g)

Plaintiff also alleges 15 U.S.C. § 1641(g) under TILA as a predicate violation of law to support a UCL claim.  Section 1641(g) provides that when a mortgage loan is sold, transferred, or assigned to a third party, the new owner of the debt must notify the borrower of certain information in writing within thirty days of the transfer. 15 U.S.C. § 1641(g).  A creditor that fails to comply with section 1641(g) is liable in an individual action for actual damages or specified statutory damages.  15 U.S.C. § 1640(a)(1)-(2).  TILA imposes a one-year statute of limitations on private actions for damages.  Kelley v. Mortg. Elec. Registration Sys., Inc., 642 F. Supp. 2d 1048, 1059 (N.D. Cal. 2009) (citing 15 U.S.C. § 1640(e)).

Defendant argues it sent Plaintiff a notice of assignment on or about October 20, 2021, and therefore avers Plaintiff cannot plead a violation of section 1641(g) because Defendant "complied with the law."  (Mot. 9.)  Although Plaintiff failed to mention his section 1641(g) claim in his opposition—nonetheless respond to Defendant's argument to dismiss Plaintiff's general TILA claim—the Court finds Defendant's factual contention is improper at the motion to dismiss stage for the same reasons previously discussed in Plaintiff's first cause of action.  See Lee, 250 F.3d at 688 ("Factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)").

However, the Court agrees with Defendant's general argument that Plaintiff has not pled sufficient facts to state a claim under section 1641(g).  Plaintiff only generally alleges in his complaint that "Defendant failed to advise Plaintiff in writing within 30 days that his Deed of Trust was transferred or assigned to a third party, and that it is the new owner or assignee of the debt [sic] is illegal in violation of Title 15 U.S.C. § 1641(g)."  (Compl. ¶ 16.)  Parsing through his conclusory allegation, Plaintiff appears to base his general TILA claim on the allegation that the assignment of deed of trust recorded on October 20, 2021 triggered Defendant's disclosure obligations under section 1641(g).  (Compl. ¶ 10.)  However, section 1641(g) notice requirements only apply when a mortgage loan—not simply a deed of trust—is transferred or

---

default.  (See Compl. ¶ 19, 31, 33.)  Kearns v. Ford Motor Co., 567 F.3d at 1125 (noting any claim under the "fraudulent" prong of the UCL is subject to Rule 9(b)'s heightened pleading standard).

assigned to a third party.  "Based on its plain language, section 1641(g)'s disclosure obligation is triggered only when ownership of the 'mortgage loan' or 'debt' itself is transferred, not when the instrument securing the debt (that is, the mortgage) is transferred."  Cheatham v. Real Time Resolutions, Inc., No. 2:19-cv-08911-RGK-JPR, 2020 WL 1000606, at *3 (C.D. Cal, Jan. 7, 2020) (finding plaintiff insufficiently pled a section 1641(g) claim when she merely pled Defendant failed to notify her that her deed of trust was assigned to a third party, not that a mortgage loan or underlying debt was transferred); see also Orosco v. Specialized Loan Servicing, LLC, No. 2:20-cv-00743-KJM-EFB, 2020 WL 4898054, at *4 (E.D. Cal. Aug. 20, 2020) (finding plaintiffs insufficiently pled a section 1641(g) claim when they identically alleged the defendant failed to advise plaintiffs that the "Deed of Trust was transferred or assigned to a third party, and that it is the new owner of assignee of the debt is [sic] illegal in violation of Title 15 U.S.C. § 1641(g)").  Without an allegation that Defendant, as the new owner or assignee of Plaintiff's "mortgage loan," failed to notify Plaintiff in writing of the transfer or assignment, the Court finds Plaintiff has not sufficiently pled a claim for violation of 15 U.S.C. § 1641(g). [7]

Given the UCL must "borrow" violations of other laws to be independently actionable as unfair competitive practices, the Court also finds Plaintiff's insufficiently pled TILA violation cannot serve as a predicate violation under the UCL's "unlawful" prong.  Korea Supply Co., 29 Cal. 4th at 1143.   (See Compl. 53 ("Defendant's business practices of failing to advise homeowners in writing within 30 days that his Deed of Trust was transferred or assigned to a third party, and that it is the new owner or assignee of the debt is illegal in violation of Title 15 U.S.C. § 1641(g)").)  Further, similar to his predicate state law violations, Plaintiff fails to allege any injury in fact caused by Defendant's purported TILA violation in order to establish standing under the UCL.

---

[7] The Court notes Defendant removed the instant action to this court on the sole basis of federal question jurisdiction. (See ECF No. 1 at 3 ("Specifically, plaintiff alleges at paragraphs 16 and 53 of the Complaint that Defendant has violated Title 15 U.S.C. Section 1641(g) concerning alleged violation of federal law related to the assignment of the loan").)  Given the lack of diversity of citizenship between the parties, the Court's subject matter jurisdiction is contingent on the survival of Plaintiff's generally alleged TILA claim.  Based on the Court's finding that Plaintiff has failed to sufficiently allege a violation of 15 U.S.C. § 1641(g), the Court has no pending federal question before it.  As discussed with the parties at the hearing held in this matter on October 18, 2023, the Court recommends remanding the action to state court should Plaintiff elect not to amend his complaint to sufficiently allege a violation of 15 U.S.C. § 1641(g).

1      Accordingly, the Court recommends granting Defendant's motion to dismiss Plaintiff's

2  general allegations contained in paragraphs 16 and 53 for failure to state a claim for violation of

3  15 U.S.C. § 1641(g) with leave to amend.  Further, because Plaintiff has failed to properly state a

4  claim for a violation of 15 U.S.C. § 1641(g), the Court also recommends granting Defendant's

5  motion to dismiss Plaintiff's UCL cause of action wherein Plaintiff alleges 15 U.S.C. § 1641(g)

6  as a predicate violation of law with leave to amend to the extent Plaintiff also amends his

7  complaint to establish standing under the UCL.

8        **H.**    **Seventh Cause of Action for Cancellation of Instruments**

9      Plaintiff's seventh cause of action seeks cancellation of the recorded notice of default and

10  notice of sale.  (Compl. ¶ 61.)   Under California Civil Code section 3412, a court may order the

11  cancellation of a written instrument if "there is a reasonable apprehension that if left outstanding

12  it may cause serious injury to a person against whom it is void or voidable."  Accordingly, to

13  obtain cancellation of an instrument, a plaintiff "must show that he will be injured or prejudiced

14  if the instrument is not cancelled, and that such instrument is void or voidable."  Zendejas v.

15  GMAC Wholesale Mortg. Corp., No. 1:10-CV-0184 OWW GSA, 2010 WL 2629899, at *7

16  (E.D. Cal. June 29, 2010).  "Cancellation of an instrument is essentially a request for rescission

17  of the instrument."  Deutsche Bank Nat'l Tr. Co. v. Pyle, 13 Cal. App. 5th 513, 523 (2017).

18      Plaintiff's complaint alleges that he has "reasonable belief" the notice of default and

19  notice of sale "are voidable or void ab initio."  (Compl. ¶ 61.)  However, as Defendant argues,

20  Plaintiff fails to plead any facts to support the allegation that either instrument is "void or

21  voidable," as required under section 3412.  In his opposition, Plaintiff only reiterates the notice

22  of default and notice of sale are "illicit recordings" and "disparaging instruments that were

23  intended to affect Plaintiff and his home" without demonstrating how he has properly plead

24  either instrument is "voidable or void ab initio."   (Opp'n 22.)   "Threadbare recitals of the

25  elements of a cause of action, supported by mere conclusory statements" are insufficient to state

26  a cognizable claim.  Iqbal, 556 U.S. at 678.  Because Plaintiff's complaint fails to plead facts

27  demonstrating the notice of default and notice of trustee's sale are "void or voidable" and would

28  cause "serious injury" if not canceled, the Court recommends granting Defendant's motion to

dismiss Plaintiff's seventh cause of action with leave to amend.

**I.     The Court Recommends Granting Leave to Amend Plaintiff's Fifth, Sixth, and Seventh Causes of Action.**

Under Rule 15(a), leave to amend "shall be freely given when justice so requires," because "the court must remain guided by the underlying purpose of Rule 15 … to facilitate decisions on the merits, rather than on the pleadings or technicalities." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). Nevertheless, a district court need not grant leave to amend where the amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the party seeking amendment has acted in bad faith. Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). "The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court." Id.

At the October 18, 2023 hearing, Plaintiff's counsel conceded no remedy is available to Plaintiff under his first cause of action for violation of California Civil Code section 2923.5 because the property has already been sold. Accordingly, because the claim cannot be cured by amendment, the Court recommends granting Defendant's motion to dismiss Plaintiff's first cause of action without leave to amend. Further, Plaintiff conceded in his opposition that he was no longer pursuing his second cause of action for violation of California Civil Code section 2924(a)(1). Plaintiff's counsel also conceded at the hearing that Plaintiff did not oppose Defendant's motion to dismiss his fourth cause of action for negligence. Given Plaintiff's concessions, the Court also recommends granting Defendant's motion to dismiss Plaintiff's second and fourth causes of action without leave to amend.

As to Plaintiff's fifth cause of action for wrongful foreclosure, sixth cause of action for UCL violations, and seventh cause of action for cancellation of instruments, the Court finds Plaintiff has not acted in bad faith and it would not prejudice Defendant or be futile to grant another opportunity to cure deficiencies in the complaint. The Court therefore recommends that Plaintiff be granted leave to amend his complaint to address the deficiencies in his fifth, sixth, and seventh causes of action as noted in these findings and recommendations.

# V.

## RECOMMENDATION AND ORDER

For the above explained reasons, IT IS HEREBY RECOMMENDED that:

1.    Defendant's request for judicial notice be GRANTED;

2.    Defendant's motion to dismiss Plaintiff's first, second, and fourth causes of action, be GRANTED without leave to amend;

3.    Defendant's motion to dismiss Plaintiff's third cause of action be DENIED;

4.    Defendant's motion to dismiss Plaintiff's fifth and seventh causes of action be GRANTED with leave to amend; and

5.    Defendant's motion to dismiss Plaintiff's sixth cause of action be granted in part and denied in part as follows:

    a.    Defendant's motion to dismiss Plaintiff's sixth cause of action for UCL violations predicated on California Civil Code sections 2923.5, 2924(a)(1), and 2934a(a)(1) be GRANTED without leave to amend; and

    b.    Defendant's motion to dismiss Plaintiff's sixth cause of action for UCL violations predicated on California Civil Code section 2924.9 and 15 U.S.C. § 1641(g) be GRANTED with leave to amend.

///
///
///
///
///
///
///
///
///
///
///
///

1    These findings and recommendations are submitted to the district judge assigned to this

2   action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen**

3   **(14) days** of service of these recommendations, the parties may file written objections to the

4   findings and recommendations with the Court.    Such a document should be captioned

5   "Objections to Magistrate Judge's Findings and Recommendations."   The District Judge will

6   review  the  Magistrate  Judge's  findings  and  recommendations  pursuant  to  28  U.S.C.  §

7   636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may

8   result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014)

9   (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

10

IT IS SO ORDERED.

11

12   Dated:   **November 21, 2023**

UNITED STATES MAGISTRATE JUDGE